# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

LARRY BAKER,

                    Petitioner,            :     Case No. 3:15-cv-414

    - vs -                                 District Judge Walter Herbert Rice
                                         Magistrate Judge Michael R. Merz

WARDEN,
  Noble Correctional Institution,

                              :

                    Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court for decision on the merits. Mr. Baker seeks relief from his conviction in the Montgomery County Common Pleas Court on four counts of murder, one count of aggravated robbery, and one count of felonious assault. He pleads the following grounds for relief:

> **Ground One:** Evidence was insufficient to convict Mr. Baker.
>
> **Supporting Facts:** The record is devoid of any evidence Mr. Baker was aware the robbery of the pawn shop was going to take place. The record is also devoid of any evidence Mr. Baker acted in concert with or aided or assisted the co-offenders in committing robbery. Because the State failed to produce any evidence Mr. Baker participated in the robbery or had knowledge of the robbery, the death of the victim and co-defendant could not be a foreseeable result of Mr. Baker's actions.
>
> **Ground Two:** Mr. Baker's trial counsel was ineffective.
>
> **Supporting Facts:** Counsel demonstrated a lack of basic knowledge related to the motion to suppress. Counsel failed to file

the right motion to suppress.  Mr. Baker was prejudiced by counsel's failure to file the appropriate motion to suppress.

**Ground Three:**  Ineffective assistance of trial counsel.

**Supporting Facts:**  Trial counsel failed to investigate and subpoena crucial witnesses in Mr. Baker's case that would have vindicated Mr. Baker of any knowledge of criminal activity.

(Petition, ECF No. 1.)

**Procedural History**

In March 2012 the Montgomery County Grand jury indicted Baker on four counts of murder with firearm specifications, two counts of felonious assault, and two counts of aggravated robbery.  At sentencing, the trial judge merged the counts of murder relating to each victim and the firearm specifications relating to each and imposed a sentence of thirty-six years to life imprisonment.  The Second District affirmed the convictions and sentence. *State v. Baker*, 2014-Ohio-3163, 2014 Ohio App. LEXIS 3082 (2nd Dist. July 18, 2014), appellate jurisdiction declined, 141 Ohio St. 3d 1456 (2015).

On February 19, 2014, Baker filed a petition for post-conviction relief under Ohio Revised Code § 2953.21, raising a claim of ineffective assistance of trial counsel for failure to investigate and subpoena witnesses.  The trial court denied relief and Baker appealed, claiming error in the trial judge's failure to hold an evidentiary hearing.  The Second District affirmed. *State v. Baker*, 2015-Ohio-338, 2015 Ohio App. LEXIS 315 (2nd Dist. Jan. 30, 2015), appellate jurisdiction declined, 2015-Ohio-1896, 2015 Ohio LEXIS 1329.

On September 18, 2014, Baker filed an application to reopen his direct appeal which the Second District denied.  He did not appeal this decision to the Supreme Court.  Baker filed his Petition here November 19, 2015.

## ANALYSIS

**Ground One:  Insufficiency of the evidence.**

Baker asserts in his First Ground for Relief that he was convicted on insufficient evidence.  An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship,* 397 U.S. 358 (1970); *Johnson v. Coyle,* 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.  *In re Winship,* 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson*, 443 U.S. at 319; *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset,* 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).  This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).  Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then

prove each of them beyond a reasonable doubt.  *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard,* 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger*, 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" Ibid. (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062, (2012)(per curiam).

The Second District considered this ground for relief along with Baker's claim that his conviction was against the manifest weight of the evidence. It held

> **[\*P5]** Baker raises three assignments of error on appeal. His first two assignments challenge the weight and sufficiency of the evidence, and we will address them together.

> **[\*P6]** An argument based on the sufficiency of the evidence challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997 Ohio 52, 678 N.E.2d 541 (1997). Under a sufficiency analysis, an appellate court does not make any determinations regarding the credibility of witnesses. *State v. Goff*, 82 Ohio St.3d 123, 139, 1998 Ohio 369, 694 N.E.2d 916 (1998), citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

[*P7]  In contrast, when reviewing an argument challenging the weight of the evidence, "'[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 20 Ohio B. 215, 485 N.E.2d 717 (1st Dist.1983).

[*P8]  Where an appellate court determines that a conviction is not against the manifest weight of the evidence, the conviction is necessarily based on legally sufficient evidence. *State v. Million*, 2d Dist. Montgomery No. 24744, 2012-Ohio-1774, ¶ 23; *State v. Combs*, 2d Dist. Montgomery No. 19853, 2004-Ohio-2419, ¶ 12.

[*P9]  The State established the following facts at trial.

[*P10]  On Thursday, December 22, 2011, Baker, Taylor, and McClain had cell phone conversations in the early morning hours and departed together from Detroit in Taylor's green and tan Pontiac Astro van. They drove to the Dayton area and parked a short distance from the Cash and Go pawn shop on Salem Avenue. Ilya Golub opened the shop at 9:00 a.m, and Taylor entered the shop. Baker and McClain entered the establishment about five minutes after Taylor; Baker carried a backpack. Video surveillance tapes showed that, after Baker and Taylor walked up and down the aisles of the shop, the men converged near the counter and confronted Golub. Taylor shot Golub several times at close range. Golub managed to return fire as the men were leaving the shop, striking McClain.

[*P11]  The three men ran to the van, turned it around on a side street, and drove on Salem Avenue toward Interstate 75. A man who had been eating breakfast at a restaurant across the street from the pawn shop saw the three men run from the shop and enter the green Astro van, but he was unsure which man was driving. He ran to his car and followed the van until it entered the highway. He then returned to the pawn shop and gave the van's Michigan license plate number to sheriff's deputies, who had arrived at the scene. Several witnesses testified that a silver gun was on the ground in the pawn shop parking lot.

[*P12]  Another employee of the pawn shop testified that he had

arrived for work a few minutes late on December 22, 2011, and found the door "busted" (the glass had been shot out) and Golub on the floor behind the counter with a gun in his hand; Golub was not moving. The employee testified that Golub was known to carry a gun in the store and that the store kept large amounts of cash in a safe to facilitate loans. No testimony was offered about what, if anything, was taken from the pawn shop.

 [*P13]  The deputies broadcast a description of the van; they also recovered the revolver from the parking lot and spent casings from in and around the pawn shop and from the exterior of the building across the street. They discovered that the van was registered to Taylor.

 [*P14]  Sherri Webb, a cousin of Taylor and an emergency medical technician in Michigan, testified that she received a series of phone calls from Taylor on December 22, 2011, beginning at approximately 10:00 a.m. Taylor stated that his friend had been shot, and Webb provided Taylor with instructions on performing CPR and information about the locations of hospitals along Interstate 75 in Ohio and Michigan along the route to Detroit. Taylor later told Webb that he "dumped Wayne" (McClain) on Kirby Street in Detroit. Webb testified that Kirby was not far from I-75. Webb contacted the police in an effort to save McClain (although she did not know his identity at the time).

 [*P15]  At approximately 1:10 p.m. on December 22, 2011, McClain's body was found in an alley near 609 East Kirby Street in Detroit, with bullet wounds in the elbow and upper back.

 [*P16]  Fatimah Muhammad, one of Taylor's girlfriends, testified that Taylor came to her house around 3:00 p.m. on December 22, and entered through the back door, which was unusual. Her garage was about 15 feet from the back door. She testified that Taylor was very upset when he came in, and was crying, but that he did not stay long. He was picked up by someone in a red SUV, and went to an appointment with his parole officer. She never saw him or the red SUV again. She later learned that the red SUV belonged to Baker.

 [*P17]  By the afternoon of December 22, the Montgomery County Sheriff's Office was working with a cellular service provider to obtain information about the real-time location of two phones associated with Taylor. The sheriff's department asked the Southfield, Michigan, police department to set up surveillance on Taylor, and it informed the Southfield police that Taylor might be

at a certain address. The Southfield police recognized this address as a parole office and responded to that address while Taylor was still in the building. While Taylor was being arrested at the parole office, his cell phones received several incoming calls from "Larry."

[*P18]  On December 23, 2011, Montgomery County Sheriff's Office detectives, working in conjunction with the Michigan State Police, used cell phone records to identify a connection between Taylor and "Larry" (Baker), and they obtained a photograph of Baker. When this photograph was compared with the video from the pawn shop robbery, Baker was identified as a suspect, and a search warrant was obtained for his home on Santa Rosa Drive in Detroit. McClain's wallet was found under a mattress in the home, but Baker's location was unknown at that time. A warrant was issued and he was arrested at his home in February 2012.

[*P19]  Also on December 23, Taylor's van was found parked inside the garage at Muhammad's home. An atlas, cleaning supplies, rags, and a lottery ticket were found in the van. Muhammad, who did not store a car in her garage, testified that she had been unaware that Taylor's van was parked in her garage until the police arrived. A large red stain was present on the second row of seats inside the van, some of which appeared to have been bleached. Muhammad testified that she had ridden in the van on Wednesday, December 21, and the cleaning supplies, the blood stain, and the lottery ticket had not been in the van at that time.

[*P20]  The lottery ticket found in the van was purchased on December 22, 2011, at 1:04 p.m. The ticket led the Michigan State Police to a lottery terminal at a CVS in Detroit, four to five blocks from Kirby Street. Surveillance videos from the CVS at the relevant time showed two men drive into the parking lot in a 1995 Pontiac minivan matching the description of the van involved in the pawn shop robbery; surveillance video inside the store also showed Baker, dressed in the same clothing as in the pawn shop video, purchasing a lottery ticket. The other man stayed in the van, which remained in the CVS parking lot while Baker was in the store.

[*P21]  Montgomery County Sheriff's Office Detective Patrick O'Connell testified that he had tracked the activities and location of the cell phone  towers off of which Taylor's, McClain's and Baker's cell phones had "pinged" the morning of December 22, 2011. He documented that the men had exchanged phone calls during the night and that, beginning shortly after 4:40 a.m., the coordinates of

their travel had generally followed a path from Southfield, Michigan to Santa Rosa Avenue in Detroit (Baker's residence), south along I-75 to Toledo and on to Dayton, where there was a ping 1/4 mile from the pawn shop, and then north again along I-75 to Detroit and a location near Kirby (where McClain's body was dumped), to the area of Muhammad's house, and then to the parole office.

 [*P22]  An inmate who spent some time in the same pod with Baker at the Montgomery County Jail testified that, in talking about why he was in jail, Baker had described "[being] on a roll" from Detroit when he committed a robbery involving a shoot-out. According to the fellow inmate, Baker claimed that he had only been driving the car and that the "other two dudes" did the shooting.

 [*P23]  DNA linked to McClain and Baker was found on the gun in the pawn store parking lot. DNA evidence found on the steering wheel and driver's door of the Astro van belonged to Taylor. The blood on the second seat of the van belonged to McClain.

 [*P24]  The forensic pathologist who conducted the autopsy of McClain testified that, based on his injuries, McClain could have run a short distance after he was shot. He also testified that McClain would likely have survived the "tension pneumothorax" that killed him, if he had received treatment.

 [*P25]  Baker did not call any witnesses at trial. His attorney did not deny that Baker had made the trip from Detroit to Dayton with his friends or that he had been present at the robbery and shooting; the defense asserted that Baker had been a mere bystander during the robbery and had not known that the other men intended to rob the pawn shop.

 [*P26]  The jury was instructed on complicity and aiding and abetting, as well as the principal offenses with which Baker was charged. It was further instructed that "[t]he mere presence of an accused at the scene of the crime and the fact that he was acquainted with the perpetrator is not sufficient proof in and of itself that he was an aider or abettor." It was also correctly instructed that it could rely on direct and/or circumstantial evidence, and that it could infer facts from other facts that had been proven by the evidence.

 [*P27]  The record contains substantial competent, credible evidence upon which the jury could have reasonably concluded

that Baker conspired with, assisted or encouraged Taylor and McClain in the robbery of the pawn shop. If Baker was involved with the robbery in any of these ways, it makes no difference who held or fired the gun(s) used in the offense; he would be equally guilty of robbery and murder. *See* R.C. 2923.03; *State v. Letts*, 2d Dist. Montgomery No. 15681, 2001 Ohio App. LEXIS 2749, 2001 WL 699537, * 4 (June 22, 2001); *State v. Cochran*, 3rd Dist. Marion No. 9-81-30, 1982 Ohio App. LEXIS 14920, 1982 WL 6795, * 5 (May 19, 1982).

[*P28] As stated above, the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact; the jury is free to believe all, part, or none of the testimony of each witness who appears before it. It is also permitted to draw reasonable inferences from the evidence presented. The jury chose to believe the State's version of the facts. Baker's conviction was supported by sufficient evidence, and we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed.

[*P29] The first and second assignments of error are overruled.

*State v. Baker*, 2014-Ohio-3163, 2014 Ohio App. LEXIS 3082 (2nd Dist. July 18, 2014).

The Second District applied the correct standard of law because *State v. Thompkins, supra,* embodies the *Jackson v. Virginia*, 443 U.S. 307 (1979) standard articulated by the Supreme Court.

Baker disagrees with the Second District's conclusion and offers a counter statement of facts (Reply, ECF No. 12). The facts which he claims are true but which differ from the findings of fact by the Second District recited above are:

1. On the morning of the crime, Darren Taylor called Baker and asked him to go along to Dayton to "pick up some money." *Id.* at page 4.

2. No more than five minutes after entering the pawn shop, the employee waives [sic] to Anthony McClain at the rear of the shop and McClain that Petitioner both walk to the counter and stood next to Darren Taylor, however, McClain turned and walked toward the front door of

the pawn shop. While the employee is talking to McClain, Taylor pulls from his waist band a semiautomatic [sic] hand gun and grabs the employee and pulls him to close to him. Petitioner is shown to be shocked and stunned at what has just transpired in the pawn shop security surveillance video. Petitioner backs away from the commotion and witness McClain pull out a chrome .357 revolver from his waist band and fires a shot towards the employee and shortly thereafter, Taylor also fires a shot towards the employee. Video shows Petitioner in a trance like state, confused, not knowing what to do, run or duck. Petitioner collected his thoughts and ran out the pawn shop. Taylor and McClain followed.

3.    When the men re-entered the van and headed back to Detroit, as soon as Baker saw McClain was bleeding, he asked Taylor to let him out, but Taylor refused.

4.    When the got to Detroit, Baker called police and told them where to find McClain's body.

5.    Baker told his trial attorney, Clyde Bennett, that Taylor would testify that Baker did not know a robbery was planned.

All of these facts, if true, would have supported Baker's claim that he was not a participant in the crimes. Baker writes in his Reply as if these facts were true. However, he did not testify at trial and in fact no witnesses were called by the defense at trial. He provides no record references to anywhere in the state court record where admitted evidence of these facts can be found.

The question whether the Second District's decision on the sufficiency of the evidence question was a reasonable application of *Jackson v. Virginia*, 443 U.S. 307 (1979) must be decided on the basis of the facts before that court, not facts added to the record later. In *Cullen v. Pinholster,* 563 U.S. 170 (2011), the Supreme Court held that a federal court's review of a state

court decision under 28 U.S.C. § 2254(d)(1) is strictly limited to "review of the state court record," and that evidence acquired through use of an evidentiary hearing may not be considered. *Id.* at 182.

Baker cites Ohio law to the effect that a bystander or an acquaintance of the perpetrator who happens to be present when a crime is committed cannot be convicted on that basis alone. But, as the Second District found, the jury was properly instructed on this law and inferred from the testimony that Baker was part of the plan to rob the pawn shop. Baker exercised his Fifth Amendment privilege not to testify and the jury was instructed that they could not hold that against him. But without his testimony, all the jury had was his lawyer's claim about what happened, and they were properly told that what lawyers say at trial is also not testimony. The jury might well have wondered how likely it is that a man in Detroit will get in a car a 5:00 in the morning and drive with two friends the more than 200 miles to Dayton, Ohio, just to "pick up some money". The jury also heard that Baker's DNA was on the gun found in the pawn shop parking lot without hearing any innocent explanation of that undisputed fact.

Taken together, the facts proven at trial are sufficient to support the convictions. Baker has not shown that the jury's and the Second District's decisions are objectively unreasonable applications of *Jackson*. The First Ground for Relief should be dismissed with prejudice.

**Ground Two:  Ineffective Assistance of Trial Counsel**

In his Second Ground for Relief, Baker alleges ineffective assistance of trial counsel in connection with his motion to suppress in this case. Baker particularizes this claim in his Reply:

> In the case in chief, trial counsel was ineffective throughout the pendency of the case.  Beginning at the motion to suppress

> hearing, counsel demonstrated a lack of basic knowledge related to the issue at hand. Specially [sic], the motion to suppress that was filed on Petitioner's behalf related to a search warrant. In the motion filed trial counsel did not raise issues related to the affidavit that accompanied the warrant (in common legal parlance, a Franks motion, referring to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).) At the suppression hearing trial counsel attempted to ask questions that relate to a Franks motion, however, the court correctly sustained the State's objection due to counsel not filing the correct motion to suppress. (Vol. VI Tr. 18-19). The transcript of the jury selection is fraught with defense counsel's inability to articulate the correct legal standards, or to communicate effectively with the jury. (Vol. 1, Tr. 118, 131, 133, 139, 140-142, 170). the frustration the trial court had with defense counsel is also obvious throughout the transcript. (Vol. 1, Tr. 157, 164-165, Vol. VI, Tr. 223-224). Petitioner has been prejudiced because of the ineffectiveness of trial counsel related to not filing the appropriate motion as well as not effectively defending Petitioner during trial. It is one thing to zealous advocate for a client it is another for counsel to be so cantankerous that it becomes a harm to the client. Petitioner was prejudice [sic] by trial counsels behavior.

(Reply, ECF No. 12, PageID 1850-51.)

This claim is based on the record and thus was raised on direct appeal as Baker's third assignment of error which the Second District decided as follows:

> [**\*P30**] In his third assignment of error, Baker asserts that he was denied the effective assistance of counsel because 1) counsel lacked basic knowledge regarding the motion to suppress; 2) counsel had ineffective communication with the jury and discussed incorrect standards with the jury, and 3) counsel "frustrated the trial court" throughout the proceedings.

> [**\*P31**] We review alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of

reasonableness and that his or her errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Id*.

 [*P32]  With respect to the  motion to suppress, which concerned the search warrant for Baker's residence, Baker identifies only one example of counsel's alleged "lack of basic knowledge": a question asked by defense counsel at the suppression hearing of a witness from the Michigan State Police. Defense counsel asked the witness to describe what information she had with respect to Baker's involvement in the robbery and murder before seeking a search warrant for his home. The State argued that the affidavit in support of the search warrant was beyond the scope of the issues raised in the motion to suppress and the "four corners" of the warrant, and its objection to the question was sustained. According to Baker, this question showed defense counsel's lack of understanding of the holding in *Franks v. Delaware*, 438 U.S. 154, 171, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). Counsel's next question, which asked what information the witness had received from Montgomery County pertaining to Baker's involvement in the "incident," was allowed.

 [*P33]  Counsel's question did not, on its face, evince a lack of understanding of the law with respect to search warrants or motions to suppress. Moreover, there is no evidence in the record  to suggest that the facts of this case supported a challenge to the affidavit underlying the search warrant. As such, there is no basis to conclude that counsel's failure to file a more expansive motion to suppress (based on *Franks*) demonstrated counsel's ineffectiveness or met either prong of *Strickland*.

 [*P34]  Baker also asserts that counsel displayed a lack of knowledge and "ineffective communication" during jury selection. Although he cites pages of the transcript, Baker does not otherwise present an argument as to how counsel acted ineffectively. On one of the cited pages, defense counsel commented to the prospective jurors about how they would want a defense attorney to provide zealous representation "if your son was sitting there" as a defendant; the court sustained the State's objection to the comment. At another point, defense counsel asked prospective jurors whether they thought they (the jurors) "should be accountable for the conduct of two other individuals that are not you" or of whose actions they were unaware. Again, the State's objection was sustained in open court. These examples may demonstrate that defense counsel was attempting, during voir dire, to suggest the defense's theory of the case (that Baker was an unknowing

bystander to the robbery) and to ensure that prospective jurors would be capable of separating the acts of an unknowing bystander from criminal conduct of his companions; they do not demonstrate that defense counsel appeared incompetent to the jury or that he acted in a manner that prejudiced Baker in the eyes of the potential jurors. The cited pages do not demonstrate representation that fell below an objective standard of reasonableness.

[*P35]  Baker also cites a section of the transcript wherein the parties and the court were in chambers discussing challenges for cause. After defense counsel stated that he did not have any challenges for cause that had not already been addressed by the State, the court raised a question as to Juror # 27, who "said he was 50 yards away when [the robbery] happened. He was there when the investigation occurred" and "walked up." The judge asked, "Does that cause any hair to raise on anybody's back?" Defense counsel then asked that Juror # 27 be stricken for cause. Although defense counsel had previously passed on objections to the juror, the court "let [him] re-open" and challenge the juror for cause. The court  pointed out that neither party had questioned the juror during voir dire on that issue, so that it would be more clear whether the juror could be "fair and impartial." The court then overruled the challenge for cause.

[*P36]  We agree with the trial court that the record does not establish that there was any basis to strike Juror # 27. Although defense counsel might have questioned the juror more extensively about his presence near the scene of the crime and his observations there, defense counsel could have reasonably concluded that the prospective juror's observations after the event were unlikely to have had any bearing on Baker's guilt. This is especially true since anything the juror might have seen occurred after the shootings, and those events were not in dispute. There is no basis to conclude that defense counsel was ineffective in failing to question Juror # 27 further or in failing to take the initiative to strike him.

[*P37]  Finally, Baker contends, without any specific references or allegations of prejudice, that trial counsel was ineffective because he was "cantankerous" and "frustrat[ed] the trial court." Having thoroughly reviewed the record, we find no support for this assertion.

[*P38]  Baker has not demonstrated that he was denied the effective representation of counsel.

[*P39]  The third assignment of error is overruled.

*State v. Baker,* 2014-Ohio-3163.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). The Second District clearly decided this constitutional claim on the merits and applied the correct federal standard derived from *Strickland v. Washington*, 466 U.S. 668 (1984).

To prevail on an ineffective assistance of trial counsel claim, a habeas petitioner must show that his counsel's performance was deficient, measured by the professional standards prevailing at the time of trial, and that he was prejudiced by the inept performance.

> "A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fair-minded jurists could disagree" on the correctness of the state court decision," *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). The state court decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall,* 572 U.S. ___, ___ (2014), slip op. at 4.
>
> When the claim at issue is one for ineffective assistance of counsel, moreover, AEDPA review is "doubly deferential," *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011), because counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Burt v. Titlow*, 571 U.S. ___, ___ (2013), slip op. at 9)(quoting *Strickland v, Washington*, 466 U.S. 668, 690 (1984); internal quotation marks omitted). In such circumstances, federal

> courts are to afford "both the state court and the defense attorney
> the benefit of the doubt."   at ___ (slip op. at 1).

*Woods v. Etherton*, 578 U.S. ___, 136 S. Ct. 1149 (2016)(per curiam; unanimous), reversing

*Etherton v. Rivard*, 800 F.3d 737 (6th Cir. 2015).

Baker has not shown the Second District's application of *Strickland* was objectively unreasonable.  Going beyond what Judge Froelich said, it is not uncommon for defense counsel to ask questions at suppression hearings that go beyond the technical scope of the hearing. Sometimes the prosecutor will not object because he or she knows that the answer will show how strong the state's case is and thereby persuade a defense of the wisdom of pleading guilty. Defense counsel cannot know whether there will be an objection until he asks the question.  But there is no deficient performance involved in asking for information that the defendant might not be strictly entitled to.

As the Second District points out, Baker has offered no reason why a *Franks v. Delaware* motion to suppress would have been successful, so it was not deficient performance to fail to make one.

Baker also questions a number of voir dire questions counsel asked to which objections were sustained.  The questions which Baker thinks were problematic were questions designed either to elicit sympathy for Baker or introduce the defendant's theory of the case.  Objections were sustained, but asking the questions was not deficient performance.  Attorneys are taught in trial practice courses to attempt to do exactly those things.  While this Court does not in any way question the propriety of the trial judge's rulings in sustaining the objections, the Court can easily imagine trial judges who would have been more liberal.  In any event, the questions were well chosen to assist Baker's case and trial counsel had to have some way to introduce the defense theory of the case since Baker was not going to testify.  In addition, the record shows no

evidence of prejudice at all.

Baker argued to the Second District as he argues here that trial counsel was "cantankerous" and frustrated the trial judge. The Second District found no record basis for this claim. *State v. Baker, supra,* ¶ 27. It is a common experience of trial judges that certain lawyers get under their skin. It is a common experience of trial attorneys that some judges are more prickly than others. These are ordinary incidents of trial experience and do not show either that the lawyer was ineffective or that the judge was biased. See *Liteky v. United States,* 510 U.S. 540, 554-55 (1994).

Baker's Second Ground for Relief is without merit and should be dismissed.


**Ground Three: Ineffective Assistance of Trial Counsel**


In his Third Ground for Relief, Baker complains of ineffective assistance of trial counsel which has to be demonstrated by facts outside the appellate record and therefore were included in his petition for post-conviction relief under Ohio Revised Code § 2953.21. In this claim he emphasizes trial counsels' failure to interview co-defendant Darren Taylor and to follow up on Baker's asserted 911 call to the Detroit police (Reply, ECF No. 12, PageID 1853-55).

The Second District considered this claim on Baker's appeal from denial of his petition for post-conviction relief. His sole assignment of error on appeal was that the petition had been denied without an evidentiary hearing. In affirming the trial court's dismissal of the petition, Judge Froelich wrote for the Second District:

> [*10] With respect to the testimony of Darren Taylor, Baker's petition and its attachments suggest that letters and statements made by Taylor after the crime supported Baker's contention that, although he (Baker) was present at the robbery, he had not actively

participated in it. The statements Taylor made to his girlfriend suggest confusion on Taylor's part about how the police had connected Baker and his wife with the crime during their investigation, and Taylor had given conflicting statements to the police about who his accomplices had been. The petition asserts that Baker instructed his attorney to speak with Taylor, who "could clear up any wrong involvement of petitioner's behalf in this case" by testifying that Baker "had no knowledge that [Taylor] and Anthony McClain were going to Ohio to commit a Robbery offense, let alone commit murder." The petition asserts that trial counsel did not talk with or subpoena Taylor.

[*11]  The trial court held that Baker's documentation in support of this claim, which included his own affidavit, an unidentified handwritten narrative, and various police reports, failed to establish that Taylor was willing to testify during Baker's trial. The court further noted that "Taylor had a history of lying when asked about the events" surrounding the shooting, including a claim in his initial interview with the police that Baker had not been with him. Baker had admitted being at the pawn shop, and surveillance footage also documented his presence. The court concluded that, "even if Mr. Taylor had agreed to testify at [Baker's] trial, it is unclear whether his testimony would have been truthful or whether it would have had any effect on the jury." Further, the court found that trial counsel's decision not to call Taylor, a co-defendant of Baker who had been convicted of the same offenses before Baker's trial, was a reasonable, strategic choice.

[*12]  The evidence relied upon by Baker did not establish that Taylor was willing to testify on Baker's behalf or that, if Taylor had done so, his testimony would have reflected Baker's alleged non-accomplice involvement in the crime or would have otherwise been helpful to the defense. The trial court did not abuse its discretion in rejecting this argument without a hearing.

[*13]  With respect to the 911 call, Baker's petition alleged that he had called 911 from McClain's cell phone as Taylor was dumping McClain's body in an alley in Michigan. According to the petition, Baker "had to hang up [when Taylor returned to the car,] fearing for his life" if Taylor realized he had made such a call. Baker asserted that he informed dispatch of the location of the body before Taylor returned to the car, then hung up. Baker contends that trial counsel was ineffective in failing to investigate or present evidence about this 911 call.

[*14]  Baker's petition did not include any evidence about the

nature or content of the 911 call. The court observed that Baker
merely alleged that counsel should have investigated the call more
thoroughly, but did not "specify what would have been discovered
by any additional investigation * * * [or] allege any additional
facts to suggest a more thorough investigation would have changed
the outcome of the trial." The trial court noted that evidence about
the call was presented at trial: testimony was presented that calls
were made to the police department from McClain's cell phone,
and that the calls originated near Baker's home. The court stated
that, because the phone calls came from near Baker's house, "it
appears that the jury viewed the phone calls as links between the
Defendant and the murders, rather than evidence of his innocence,"
and that trial counsel made a reasonable, strategic choice not to
focus on this evidence. The court did not abuse its discretion in
concluding that Baker's assertions and evidence regarding the 911
call did not warrant a hearing on his petition for postconviction
relief.

*State v. Baker*, 2015-Ohio-338, 2015 Ohio App LEXIS 315 (2nd Dist. Jan. 30, 2015).

As noted above with respect to Ground Two, a federal habeas court is required to defer to

a state court ruling on the merits of a constitutional claim unless it is contrary to or an objectively

unreasonable application of clearly established Supreme Court precedent.  On a claim of

ineffective assistance of trial counsel, deference is double, to wit, to the judgment of the trial

lawyer and that of the state courts.

This Court finds the Second District's decision was not an objectively unreasonable

application of *Strickland*. With respect to the 911 call, Baker offers no corroboration of what he

alleges he said.  Even if he had produced corroboration, it would hardly have been a magic bullet

for acquittal.  By the time he, Taylor, and McClain's body had arrived back in Detroit, Baker

knew at least one death had result from the incident and he had had several hours to think of

ways to try to extricate himself from it, one of which might be to tell Detroit police where the

body was.

Respecting the possibility Taylor would provide exonerating testimony, Baker produced

no evidence directly from Taylor that he would have testified for Baker. Taylor himself was facing murder charges arising from the same incident.[1] Taylor's trial commenced April 25, 2013,[2] and a verdict was returned May 2, 2013. However, Taylor appealed and there would be no good reasons for him to waive his privilege against self-incrimination by discussing the case with Baker's lawyer or testifying at Baker's trial. Baker's attorney certainly could not as a matter of professional ethics question Taylor without his attorney's permission, and such permission was unlikely to have been given.

This Court cannot review directly the decision of the Ohio courts not to hold an evidentiary hearing on the post-conviction petition. There is no federal constitutional right to such a hearing.

Ground Three should therefore be dismissed with prejudice.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

---

[1] As of the date of this Report, Taylor is confined at the Lebanon Correctional Institution on a murder conviction from Montgomery County. ( http://www.drc.state.oh.us/OffenderSearch/details.aspx?id=A685345&pg=x; visited April 25, 2016).
[2] Docket of Case No. 2011 CR 4313 (www.clerk.co.montgomery.oh.us; visited April 25, 2016).

April 26, 2016.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).